## EX. PARTE RIVERA, *alias* PANCHITO.

## APPLICATION for a Writ of Habeas Corpus.

### No. 3.—Decided February 20, 1906.

DISTRICT COURTS—POWERS OF LEGISLATURE OF PORTO RICO WITH RESPECT THERE-
TO.—Section 33 of the Organic Act of Porto Rico empowers the Legislature
to change the organization, jurisdiction, number of judges, and the procedure
of the district courts created by the military government and continued in
existence by the said Organic Act until modified by subsequent legislation, and
this provision must be understood to refer to acts of the Legislature of Porto
Rico, and not to acts of the Congress of the United States.

DISTRICT COURTS—LAW REORGANIZING THE COURTS—FORCE AND VALIDITY THERE-
OF.—The act of March 10, 1904, reorganizing the courts, is valid and effective,
since it contains no provision incompatible with the Organic Act, and the
district courts organized by said act are legally constituted.

The facts are stated in the opinion.

*Mr. Diaz Navarro* for petitioner.

*Mr. Rossy, fiscal,* for The People.

MR. JUSTICE MACLEARY delivered the opinion of the court.

This is an application for a writ of *habeas corpus* made by
Francisco Rivera, *alias* Panchito, who is a prisoner in the
penitentiary of this Island, and under sentence of death, hav-
ing been convicted in the District Court of Guayama, of mur-
der in the first degree. His case was twice carried by appeal
to this court, on the first occasion being reversed for defects
in the verdict, and on the second affirmed He was sentenced
by the district court to suffer the death penalty, the execution
to take place on the 26th of this month. On the 17th he made
an application to the court for a writ of *habeas corpus,* which
was granted and heard on the 20th instant. On the hearing
he was remanded to the custody of the warden of the peni-
tentiary in order that his sentence might be carried into ef-
fect. From this order of the court he appealed to the Su-
preme Court of the United States, and that appeal was ad-
mitted by this court, which suspended the execution of the
sentence of death until further order, allowing time for the

preparation and presentation of his appeal to the highest tribunal.

This petition for *habeas corpus* is based on one ground alone, which is substantially identical with the first legal proposition announced by counsel in the case of *Francisco Dones,* (*ante,* p. 170) heretofore decided by this court on the 14th of the present month; and carried by appeal to the Supreme Court of the United States. The basis of the petition is substantially as follows: That the sentence pronounced by the Hon. Charles E. Foote, as judge of the District Court of Guayama, condemning the petitioner to death, and that pronounced by this court affirming said sentence, and the consequent imprisonment of the petitioner, have been and are illegal and contrary to law, for reasons which were not alleged on the appeal, but which are that the said district court was not properly constituted, acting under the authority of the Judiciary Act passed by the Legislature of Porto Rico on the 10th of March, 1904, and not under Military Orders No. 118, which was continued in force by the Organic Act, and that the said Judiciary Act passed by the Legislature of Porto Rico is unconstitutional, being contrary to the Organic Act of this Island, and especially to section 33 thereof.

It will be seen by an examination of section 33 of the Organic Act that the courts of Porto Rice established prior to the passage of said Act, and in operation at that date, by virtue of General Orders Nos. 118 and 195 promulgated by the American military authorities, and the laws and ordinances of Porto Rico, in so far as they were not in conflict with the said Organic Act, were thereby continued in force, and it was provided that the jurisdiction of said courts, and the form of procedure in them, and their various officials, should be the same as prescribed in said laws and ordinances, and said general orders, *until otherwise provided by law;* with the proviso, designating the manner in which the various judges should be appointed and the other officials should be chosen,

and giving to the Legislative Assembly "authority to legislate from time to time as it may see fit" with respect to said courts, their organization, the number of judges and officials for each, their jurisdiction, their procedure, and all other matters affecting them.

It is contended by counsel for the petitioner that under the Organic Act, and especially under section 33, that the Legislative Assembly had no authority to change the constitution of the district courts, and the number of judges therein, and to reduce the number from three, as it existed under the military orders, to one, as it now exists under the act of the Legislative Assembly, but that the constitution of the courts should remain as it was under the military orders, until changed by a law of Congress, and that where the Organic Act mentions "said courts" it refers only to municipal courts, justice courts, and such other courts as the Legislature might see fit from time to time to establish.

It is contended by the Attorney General, acting for the Government, and by his assistant, the *fiscal* of this court, that the Legislative Assembly of Porto Rico, under authority of the Organic Act, and especially sections 8, 15 and 33 thereof, had authority to change the constitution of the district courts, reduce the number of judges, alter the procedure, and enlarge or restrict the jurisdiction thereof, as it might see fit, and that the Judiciary Act passed by the said Assembly on the 10th of March, 1904, was in strict conformity with the Organic Act, and constitutional.

This question naturally divides itself into two propositions: First, do the words "until otherwise provided by law" refer to a law of Congress or a law of the Legislative Assembly? and second, do the words "said courts" refer to the district courts of this Island, or only to municipal and justice's courts and such other courts as the legislature had authority to establish?

We will examine them briefly in the order stated. Had it

been the intention of Congress, in the Organic Act, to provide that the courts should remain the same in their constitution, number of judges, jurisdiction, etc., as established by the military orders, until otherwise provided by an act of Congress, it would have been unnecessary to use any words whatever to secure that end, because Congress has the general power to alter its own acts, at any time, without reserving the right in the act itself; and besides, Congress has the right, and always had, to modify, annul or repeal any act of the Legislative Assembly of Porto Rico, should it see fit so to do. (*National Bank* v. *County of Yankton*, 101 U. S., 133.) Then in view of these acknowledged powers of Congress, it would have been a vain use of unnecessary words to say that this constitution of the courts should remain as it was on the 12th of April, 1900, until *otherwise provided by law*, for, of course, it would have so remained had nothing been said on the subject. And we see too, from an examination, not only of section 33 of the Organic, but of section 8, that this right on the part of the Insular Legislature to change the constitution and jurisdiction of the courts was clearly intended to be given, and by section 15 of said act it is given in direct and explicit words. Section 15 of the said act gives the Insular Legislature power by due enactment to amend, alter, modify or repeal any law or ordinance, civil or criminal, which is continued in force by the Organic Act, as it might from time to time see fit. General Orders No. 118 and 195 were continued in force by the Organic Act, and are the basis of the petitioner's claim in this proceeding. They are among those which the Legislative Assembly, under section 15 of the Organic Act, had the authority to amend, alter, modify or repeal. It is thus clear that the Legislature of Porto Rico acted within its constitutional powers in passing the Judiciary Act on the 10th of March, 1904.

Then in regard to the second proposition. It will be seen that the words "said courts" occur twice in section 33, once

in the purview of the section, and once in the proviso. Counsel for petitioner does not claim that the words quoted do not refer to the district courts when first used, and there is no discussion nor difference of opinion on that subject, but when used the second time, it is claimed by counsel that they refer only to municipal courts, and other inferior courts. If such was the intention of the legislative mind, then it would have been unnecessary to add the words "any others that they may deem it advisable to establish" and they would have been omitted, or the Congress would have said "municipal courts" instead of using the words "said courts."          •

It seems to us that a fair construction of this proviso makes it clear that it had reference, not only to municipal courts, justice courts, and other courts to be established by the Insular Legislature, but to the district courts, as established by the military orders. This is especially evident when section 33 is taken and read in connection with sections 8 and 15 heretofore referred to.

These same questions have been discussed and treated more at length in the opinion in the case of Francisco Dones, rendered by this court on the 14th of this month, and reference is made thereto, and to the authorities therein cited for a more elaborate expression of our views.

Then we hold in this case, as in the Dones case, that the Judiciary Act of the 10th of March, 1904, was passed in strict accordance with the Organic Act, enacted by the Congress of the United States on the 12th of April, 1900, establishing a temporary civil government in this Island, and that the district courts in this Island, as they were established and are now constituted under the Judiciary Act of the Legislature of this Island are legally and properly the courts having jurisdiction of all criminal offenses of the grade of felony, including capital cases, and that the District Court of Guayama, and the judge thereof, had jurisdiction of the case which was prosecuted against the petitioner, and that he was properly tried, convicted and sentenced therein by the said court.

Taking this view of the case, the application of the petitioner for enlargement on *habeas corpus* must be denied.

*Denied.*

Chief Justice Quiñones, and Justices Hernández, Figueras and Wolf concurred.